[Cite as *State v. Anglen*, 2020-Ohio-4830.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109049 |
| v. | : | |
| DIMITRIUS ANGLEN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 8, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634446-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey M. Maver, Assistant Prosecuting Attorney, *for appellee.*

Rick L. Ferrara, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Dimitrius T. Anglen ("Anglen") appeals from his conviction of attempted rape, with a notice of prior conviction specification and a repeat violent offender ("RVO") specification. For the reasons that follow, we affirm Anglen's conviction.

## I. Factual and Procedural History

{¶ 2} On December 4, 2018, Anglen was indicted on one count of rape, a first-degree felony, in violation of R.C. 2907.02(A)(2), with a notice of prior conviction under R.C. 2929.13(F)(6) and an RVO specification under R.C. 2941.149(A).

{¶ 3} The charges arose from an incident in the early morning hours of November 3, 2018. One week earlier, Anglen and his friend D'Andre Arnold ("Arnold") met T.H. and Destiny Bryant at a hookah bar.[1] T.H. and Anglen texted during the week and Anglen indicated his interest in obtaining a hotel room and engaging in sex with T.H. T.H. refused to stay at a hotel room exclusively with Anglen, although she was willing to do so with a group of people.

{¶ 4} On November 3, 2018, Anglen, Arnold, Destiny, and T.H. rented a hotel room to consume food and alcohol, play games, and "hang out." The foursome arrived at the hotel around 12:30 a.m., and proceeded to eat wings and play "drinking Uno." Anglen and T.H. provided widely differing versions of what transpired in the hotel room.

{¶ 5} According to T.H., she refrained from drinking a great deal that evening. Her friend, Destiny, had a habit of getting drunk and T.H. intended to take care of Destiny, as needed. While eating wings and playing cards, Anglen flirted with T.H., but she blatantly ignored his comments. T.H. conceded all four individuals

---

[1] To protect her identity, the rape victim will be referenced throughout this opinion by her initials, "T.H."

talked throughout the evening. T.H. and Destiny sat on one bed while playing cards. Arnold sat on the second bed in the room and Anglen, for much of the evening, sat in a chair. T.H. denied that she became intoxicated; vomited in the hotel room; or showered in the room. T.H. got a "weird vibe" all night from Anglen.

{¶ 6} At one point, Arnold and Destiny left the hotel room to find snacks. Anglen then made inappropriate comments to T.H. such as "[she] owed [Anglen] because [he] had [taken her] out to eat. [Anglen] wanted to taste [her]." (Tr. 44.) T.H. denied they were going to engage in such sexual activities. Anglen ignored T.H.'s rebuffs and climbed on top of her. Anglen grabbed T.H. by the wrists, held her hands over her head, and pinned her down on the bed with the weight of his body. According to T.H., Anglen held her wrists with one hand, pulled down her shorts, leggings, and underwear, and vaginally raped her. While Anglen was on top of T.H., he told her she "owed him." When Arnold and Destiny returned to the hotel room, Anglen let go of T.H.'s wrists and she fell to the floor. Anglen rolled over and pretended that he was sleeping. Destiny and Arnold did not observe the sexual assault. T.H. did not know how long Arnold and Destiny were gone from the room, but she estimated it was approximately 20 minutes. T.H. denied Anglen wore a condom or that they engaged in oral sex. She described the sexual encounter as painful and nonconsensual.

{¶ 7} Upon Destiny and Arnold's return to the room, T.H. informed Destiny that Anglen had raped her. T.H. left the room with Destiny, leaving her belongings and car keys behind. T.H. called her aunt, Tijuana Black ("Black"), who, after

hearing about the alleged rape, instructed T.H. to wait in her car until Black arrived at the hotel.[2] While in the hallway outside their room, T.H. and Destiny engaged in a loud verbal exchange that resulted in the arrival of the hotel desk clerk, Sherry Norman ("Norman"). Norman helped T.H. obtain her car keys that she had left in the hotel room.[3]

{¶ 8} After obtaining her car keys, T.H. went to her car and waited for the arrival of Black. Black and her daughter, Carlyn, picked T.H. up at the hotel and drove her to the hospital.[4] At the hospital, T.H. was examined by Colleen Spinks ("Spinks"), a sexual assault nurse examiner ("SANE") and a rape kit was collected.

{¶ 9} Anglen presented another version of the encounter. Anglen testified that the foursome drank a bottle of tequila and a half bottle of cognac over approximately one and one-half hours. Anglen stated T.H. became very drunk, vomited in the corner of the hotel room, and took a shower. After her shower, T.H. exited the bathroom dressed in only boy-shorts and a tank top. The four individuals

---

[2] Tijuana Black is not a blood relative to T.H., but was a best friend of T.H.'s mother. T.H. refers to Black as her "auntie."

[3] Norman testified at trial that she spoke with the girls in the hotel hallway. She understood that T.H. needed her car keys that she had left in the hotel room. Destiny claimed T.H. was drunk and refused to give T.H. her keys; Destiny also claimed the room was too messy and she did not know where the keys were located. Under the threat of Norman calling the police if she did not cooperate, Destiny obtained T.H.'s car keys and provided them to T.H.

[4] As T.H. drove to the hospital, she called 911 and reported the alleged rape. The Independence Police Department arrived at the hotel, and Anglen fled the scene in his car. The police pursued Anglen in a high-speed car chase. Anglen eluded the police and subsequently crashed his vehicle. Anglen turned himself in to the police four days later.

played cards for a bit longer, and then T.H. and Anglen got under the covers in one of the two beds.  Anglen wore only his boxer shorts.

{¶ 10}  Anglen claimed T.H. lay close to him with her back facing the front of his body.  T.H. touched Anglen's penis and that indicated to him she wanted to engage in sex.  Anglen touched T.H.'s breasts, stomach, and buttocks.  T.H. asked whether Anglen had a condom to which he answered affirmatively.  After Arnold and Destiny left the room, Anglen performed oral sex on T.H.

{¶ 11}  When Anglen attempted to insert his penis inside of T.H.'s vagina, she indicated the action hurt her and asked him to wait.  Anglen stopped his attempt at sexual intercourse, and at that moment Arnold and Destiny returned to the hotel room.  Anglen rolled off of T.H.  He did not pretend to have been sleeping.  Anglen estimated three minutes elapsed from the time Arnold and Destiny left the room and subsequently returned.  Anglen testified that T.H. appeared to enjoy the sexual encounter.  He denied that T.H. tried to push him away.

{¶ 12}  When Arnold and Destiny returned to the hotel room, Arnold handed T.H. her panties, which were lying on the floor, and she stayed in bed for a few minutes.   T.H. then dressed in jeans and informed the group she was "uncomfortable" and was ready to leave.  Anglen, Arnold, and Destiny were all surprised by what appeared to be T.H.'s sudden desire to leave.  Anglen conceded that T.H. and Destiny spoke with the desk clerk in the hallway.  Anglen claimed he handed T.H.'s car keys to Destiny who provided them to T.H.  T.H. proceeded to her car.  Anglen claimed he, as well as Destiny and Arnold, went to the hotel parking lot

where Anglen observed T.H. sitting in the back seat of her car. He did not approach her but learned from Arnold that T.H. claimed she had been raped. Anglen denied the truth of that allegation.

{¶ 13} Arnold, a good friend of Anglen's for ten years, testified on Anglen's behalf. Arnold corroborated Anglen's testimony that T.H. was drunk and vomited in the hotel room. When T.H. and Anglen got under the covers in one of the hotel beds, Arnold heard sounds indicative of kissing. He claimed to have "heard" a condom wrapper and subsequently saw the wrapper in a hotel trash can. Arnold and Destiny left the room to look for ice. He estimated they were gone approximately two minutes. When they returned to the hotel room, T.H. and Anglen were in bed and T.H.'s shorts were on the ground. T.H. exited the bed, donned her shorts and pants, and left the room with Destiny.

{¶ 14} At trial, the state introduced testimony from all the witnesses except Destiny whose whereabouts were unknown. Spinks and Heather Bizub ("Bizub"), a forensic scientist with the Ohio Bureau of Criminal Investigation's DNA Department, testified. Additionally, testimony was presented by the police officers who searched the hotel room following T.H.'s 911 call and interviewed the witnesses as well as the detective and investigator who conducted Anglen's interview at the police station. According to the officers, a condom or condom wrapper in the hotel room would have been catalogued; no such items were observed by the police. No vomit was evident in the hotel room. The shower had been used and towels discarded on the bathroom floor. Detective Richard Paine interviewed Anglen after

his arrest. Anglen informed the detective that he performed oral sex on T.H. but no penetration occurred during the sexual encounter. Anglen then told the detective "he did put it in her." The detective did not question Anglen with regard to the contradictory statements.

{¶ 15} Following a bench trial, the trial judge found Anglen guilty of attempted rape, a second-degree felony, in violation of R.C. 2923.02 and 2907.02(A)(2), with notice of a prior conviction specification and an RVO specification. The trial judge classified Anglen as a Tier III sex offender registrant and sentenced Anglen to a four-year prison term on the underlying crime with no sentence on the RVO specification.

{¶ 16} On September 26, 2019, appellant filed a delayed appeal presenting, verbatim, these assignments of error for our review:

> Assignment of Error I: The trial court erred as a matter of law in finding appellant guilty of attempted rape in the absence of evidence beyond a reasonable doubt of rape.

> Assignment of Error II: The manifest weight of the evidence did not support conviction for attempted rape because testimony did not overcome appellant's presumption of innocence, and did not allow the trier of fact to reasonably conclude guilt from the evidence presented at trial.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 17} In his first assignment of error, Anglen argues that the trial court erred when it determined, based upon the evidence heard at trial, that the evidence warranted consideration of the lesser offense — attempted rape — even though T.H.

argued that she was raped and that penetration occurred. Specifically, Anglen asserts that the trial judge had to either find him guilty, or not guilty, of rape and could not consider the lesser offense of attempted rape because T.H.'s testimony did not support a conviction of attempted rape.

{¶ 18} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the state has met its burden of production at trial is conducted.[5] *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. A sufficiency of the evidence argument is not a factual determination, but a question of law. *Id.*

---

[5] The abuse-of-discretion standard cited in *State v. Cain*, 10th Dist. Franklin No. 06AP-1252, 2007-Ohio-6181, ¶ 7, addressed an appeal questioning whether a specific jury instruction should have been presented to the jury and is inapplicable to this matter. Anglen's reliance on *Cain's* abuse-of-discretion standard is incorrect.

{¶ 19} According to R.C. 2907.02(A)(2), "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02. Sexual conduct has been defined as:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶ 20} Pursuant to R.C. 2945.74, a defendant may be convicted of a lesser offense than that charged in the original indictment: "The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law." R.C. 2945.74. The lesser offense need not be charged separately in the indictment "because when an indictment charges a greater offense, it "'necessarily and simultaneously charges the defendant with lesser included offenses as well.'"" *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 8, quoting *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, 905 N.E.2d 151, ¶ 14, quoting *State v. Lytle*, 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990). The crime of attempted rape is a lesser included offense of rape. *State v. Williams*, 74 Ohio St.3d 569, 578, 660 N.E.2d 724 (1995).

{¶ 21} To convict a defendant of attempted rape, the factfinder must "find, beyond a reasonable doubt, that the defendant engaged in conduct which, if

successful, would have resulted in [sexual conduct]." *State v. Robinson*, 9th Dist. Lorain No. 94CA005788, 1995 Ohio App. LEXIS 1020, 7 (Mar. 15, 1995), citing R.C. 2923.02. The existence or absence of penetration during unwanted, forceful, or threatened sexual conduct constitutes the difference between rape and attempted rape. *State v. Lucas*, 2d Dist. Montgomery No. 18644, 2001 Ohio App. LEXIS 4227, 7 (Sept. 21, 2001). To prove rape, the state must introduce some evidence, either direct or circumstantial, that penetration by the accused occurred. *Id.* If the evidence presents contact with the vaginal region but no spreading or penetration, such contact may be sufficient to prove attempted vaginal rape. *Id.*

{¶ 22} Here, accepting the evidence introduced at trial and viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the elements of attempted rape were proven beyond a reasonable doubt. According to T.H., Anglen held her hands over her head and used his body weight to anchor her to the bed while he pulled down her clothing and attacked her. (Tr. 45-46.) T.H. also stated that she could not recall many of the details because she was in shock following the assault and was not thinking clearly. (Tr. 95, 105-106.) While Anglen denied placing his hands on T.H.'s wrists, the forensic evidence demonstrated Anglen's DNA was present on her wrists. (Tr. 139-140, 523.) The forensic evidence showed that Anglen's DNA was also present on T.H.'s anal/perianal, mons pubis, thighs, belly, and belly ring swabs. (Tr. 134.) The forensic scientist could not specify the source of Anglen's DNA but based upon the high concentration, she suspected fluids such as semen or saliva to be the source

rather than skin cells. (Tr. 173.) While the tests showed male DNA was present on the vaginal swabs, the DNA sample was not sufficient to include or exclude Anglen as the contributor of that DNA. (Tr. 127-128.) The SANE nurse noted redness and tenderness on T.H.'s right shoulder and around the circumference of her right wrist. (Tr. 210-211.) The SANE nurse also observed injuries at the vaginal opening and two areas of shearing distal to the vaginal region. (Tr. 211-212.) Shearing occurs when there is a forceful rub against the skin that peels back the skin in a single flap. (Tr. 213-214, 237.) Larger red abrasions, similar to those that occur when one scrape's her knee, were also present in the vaginal region. (Tr. 214.) T.H.'s vaginal region was sore and very tender. (Tr. 214.) The SANE nurse stated that T.H.'s injuries would not have been caused by oral sex. (Tr. 234.) Additionally, Spinks felt the perpetrator did not need to "fully penetrate" to cause the vaginal injuries and that T.H.'s injuries were consistent with her complaints of vaginal penetration. (Tr. 212, 234.) Spinks's comments, which were based upon T.H.'s narrative, did not prevent the trial judge from concluding that the vaginal injuries were caused from a sexual assault where no penetration occurred.

{¶ 23} Further, Anglen informed the police during his initial interview that no penetration occurred during his encounter with T.H. Anglen attempted to qualify these statements at trial:

Q. All right. Eventually, you were arrested, right?

A. Yes. Four days later.

Q. You came down to talk to the police?

A. Yes, sir, I did.

Q. And when you — did they explain to you what penetration means in the Ohio Revised Code rape section?

A. No, they did not.

Q. And when you told them you put it in but you didn't penetrate, what did you mean?

A. I meant by I thought putting it in was consent versus penetration being with force and full sex.

Q. All right. So, this sex with [T.H.], was it completed in your mind or not?

A. No, it was not. * * *

(Tr. 512-513.) Anglen also provided the following details with regard to his sexual encounter with T.H.:

Q. And at what point did she say stop?

A. When she heard the door crack.

Q. And at this point, where was your penis? Was it trying to get inside her, or was it inside her?

A. It was trying to get inside.

Q. All right. And the door and your penis were trying to get inside at the same time, is that what you're telling me?

A. The door?

Q. They opened the door while you were trying to mount her?

A. Oh, when they entered, she said stop and I stopped and rolled over next to her. * * *

(Tr. 501.) Anglen's own testimony supported the conclusion that an attempted rape, rather than rape, occurred.

{¶ 24} A conviction for attempted rape requires a factfinder to find beyond a reasonable doubt that the wrongdoer took a substantial step towards committing the rape. *State v. Henderson*, 39 Ohio St.3d 24, 27, 528 N.E.2d 1237 (1988), citing *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976). Further, "[t]he credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Grant*, 2d Dist. Montgomery No. 19824, 2003-Ohio-7240, ¶ 48, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶ 25} It was conceivable that the trial judge found Anglen guilty of attempted rape despite T.H.'s testimony that a vaginal rape occurred. In *State v. Beranek*, 6th Dist. Lucas No. L-99-1173, 2000 Ohio App. LEXIS 4263 (Sept. 22, 2000), where the victim testified to vaginal rape but no physical evidence supported penetration, it was found conceivable that the jury could find that there was no penetration but that the defendant engaged in conduct which, if successful, would have resulted in penetration constituting rape or attempted rape. *Id.* at *6. Similarly, where a victim testified to oral, vaginal, and anal sex but no ejaculate was found within the person of the victim and the accused denied any sexual activity, it was reasonable to disbelieve the victim's testimony that penetration happened while still finding attempted penetration occurred. *State v. Hurley*, 2d Dist. Clark No. CA2409, 1988 Ohio App. LEXIS 2122 (June 2, 1988).

{¶ 26} Anglen relies on the case of *State v. Mitchell*, 1st Dist. Hamilton No. C-860253, 1987 Ohio App. LEXIS 5819 (Feb. 11, 1987), in support of his argument that the trial court erred when it convicted him of attempted rape. In *Mitchell*, the victim alleged the offender forced her to perform fellatio at knifepoint and threatened her with forcible vaginal intercourse; the offender denied any sexual conduct occurred. The *Mitchell* opinion failed to indicate what, if any, evidence was presented at trial but determined that because the court found the accused was not guilty of rape and there was no evidence to support the offense of attempted rape, the offender could not be found guilty of the lesser included offense of attempted rape. We cannot speculate on the evidence provided in *Mitchell* but we know in the case sub judice that the evidence presented supported a conviction of attempted rape. The trial judge could have reasonably disbelieved T.H. that there was penetration but still found, based on the testimony of the SANE nurse, Bizub, and Anglen that Anglen attempted to rape T.H.

{¶ 27} Anglen raises the issue of renunciation as an affirmative defense for the first time on appeal. Renunciation, an affirmative defense to a charge of attempt, must be raised at trial or is waived. *State v. Pimental*, 8th Dist. Cuyahoga No. 84034, 2005-Ohio-384, ¶ 34, citing *State v. Robertson*, 7th Dist. Jefferson No. 97 JE 41, 1999 Ohio App. LEXIS 6167, 3 (Dec. 14, 1999); R.C. 2923.02 (D). Even though Anglen was charged with rape, he denied penetration and, therefore, raised the issue of whether the lesser included offense of attempted rape was applicable. Because an indictment that charges a greater offense — rape, in this case —

necessarily and simultaneously charges the defendant with lesser included offenses, the affirmative defense of renunciation should have been raised at trial. Because Anglen failed to raise renunciation at trial, he is barred from raising this defense on appeal. Further, there was sufficient evidence for the trial court to find Anglen guilty of attempted rape, even if he had raised the affirmative defense of renunciation.

{¶ 28} Based on the evidence, the trial court did not err when it found Anglen guilty of attempted rape. Thus, Anglen's first assignment of error lacks merit and is overruled.

### B. Manifest Weight of the Evidence

{¶ 29} In his second assignment of error, Anglen contends that the verdict was against the manifest weight of the evidence. A manifest-weight challenge tests whether the prosecution has met its burden of persuasion. *State v. Williams*, 8th Dist. Cuyahoga No. 106998, 2019-Ohio-10, ¶ 34.

{¶ 30} A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 31} Anglen argues T.H.'s contradictory and dishonest testimony resulted in a manifest injustice at trial. Specifically, Anglen maintains that T.H. lied about the quantity of alcohol she consumed on the night of the alleged rape. Anglen and Arnold claimed T.H. was drunk, and as a result, vomited. (Tr. 452, 496.) T.H. admitted she consumed alcohol but denied getting drunk. (Tr. 39.) The hotel clerk thought T.H. looked tipsy but not drunk. (State's exhibit No. 29.) Upon questioning at trial, T.H.'s aunt, the SANE nurse, and Detective Bates — all of whom observed or spoke with T.H. after the alleged rape — denied that she seemed drunk. (Tr. 298, 201, 359.) And although Anglen presumed T.H. did not drive herself from the hotel to the hospital because she had been drinking, no evidence was introduced to support that theory. (Appellant's brief at 16.) Further, the investigative officers did not observe vomit in the hotel room although Anglen and Arnold testified that T.H. threw up in the room. While Anglen and Arnold presented a different opinion, numerous witnesses testified that T.H. did not appear intoxicated following the alleged rape.

{¶ 32} At trial, varying descriptions of the events that took place at the hotel room were also presented. Anglen and Arnold asserted that T.H. and Anglen were under the covers when the sexual conduct occurred, while T.H. denied laying under the covers with Anglen. T.H.'s testimony was somewhat difficult to follow. She stated that some of the covers had been removed from her bed before her encounter with Anglen but denied being under the covers with him. (Tr. 77.) Pictures obtained by the police department depicted both beds in an unmade condition. Anglen and

Arnold testified that T.H. showered and the police pictures portrayed towels on the bathroom floor. T.H. denied showering at the hotel room. The condition of the hotel room, including the condition of the beds and the location of towels, could have reasonably changed after T.H. left the room since the other three individuals remained in the room following T.H.'s departure.

{¶ 33} Anglen also argues that T.H. offered inconsistent statements describing the events that occurred between T.H. and Anglen in the hotel room. When T.H. placed the 911 call as she drove from the hotel to the hospital, T.H. stated that Anglen grabbed her by her hair. That detail was neither relayed to the SANE nurse nor repeated at trial. T.H. provided several conflicting stories describing when she pulled her knife from her purse during the evening. The various statements ranged from (1) pulling the knife out when T.H. was on the phone with Black, (2) waiving the knife at Anglen as T.H. lay on her back, (3) denying any recollection of pulling the knife out during the alleged rape, to (4) stating she pulled the knife out when T.H. was in the hotel hallway, after the incident. (Tr. 47, 48, 65, 66-67, State's exhibit No. 28.) Anglen denied seeing T.H. with a knife. (Tr. 500-501.) T.H. informed the SANE nurse that she attempted to fight Anglen and punched him twice. Yet, at trial T.H. stated she was small in comparison to Anglen and, therefore, she was not able to defend herself against him. (Tr. 47.) While some of T.H.'s statements were inconsistent, she also testified that she was in shock following the alleged rape and, therefore, was confused on some of the details. (Tr. 95, 105-106.) Further, T.H. consistently stated that Anglen forced her on the bed, held her wrists

above her head, removed her clothing without her consent, and forced himself on her.

{¶ 34} Assuming that T.H. made contradictory statements regarding the events of the alleged rape, that issue alone does not support reversal of the bench decision. This court has previously found reversal on manifest weight grounds is not supported simply because inconsistent evidence was introduced at trial. *State v. Moseley*, 8th Dist. Cuyahoga No. 92110, 2010-Ohio-3498, ¶ 27, citing *State v. Gaughan*, 8th Dist. Cuyahoga No. 90523, 2009-Ohio-955, ¶ 32. "The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible." *Gaughan* at ¶ 32. "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 74, quoting *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The jury or trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Further, "[a] factfinder is free to believe all, some, or none of the testimony of each witness appearing before it." *Peterson* at ¶ 74, citing *State v. Ellis*, 8th Dist. Cuyahoga

No. 98538, 2013-Ohio-1184, ¶ 18.  After hearing from all the witnesses, the trial court chose to believe portions of both T.H.'s and Anglen's versions of the events.

{¶ 35} The testimony of the SANE nurse and forensic scientist also supported Anglen's conviction of attempted rape.  The physical exam described shearing — peeled back skin caused by forceful rubbing — on the distal vaginal region.  (Tr. 211-214.)  Anglen contends that the forensic evidence, particularly the evidence that demonstrated a positive DNA skin stain swab on T.H.'s right thigh and belly — where he testified that he consensually touched T.H. — supports his version of the sexual encounter.  In fact, Bizub  testified the high DNA profile numbers detected with regard to Anglen's DNA on T.H.'s mons pubis, thighs, belly, and wrists, showed Anglen was a DNA contributor in those areas — areas where Anglen stated he fondled the victim — and the DNA was likely from a bodily fluid rather than skin-to-skin contact.  (Tr. 134.)  Anglen's DNA was also present on T.H.'s anal/perianal swab.  (Tr. 129.)  The forensic testimony is not conclusive as to whether a rape or attempted rape occurred.  (Tr. 131-136.)  And Anglen himself conceded to contact with T.H., but stated no penetration occurred.

{¶ 36} Upon our review of the record, we cannot conclude that the trial judge clearly lost his way and created a manifest miscarriage of justice when he choose to believe portions of T.H.'s testimony, the SANE nurse, the forensic scientist, and Anglen's statement that no penetration occurred and, accordingly, found Anglen guilty of attempted rape under R.C. 2911.01(A)(2).  Anglen's second assignment of error is overruled.

**{¶ 37}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

SEAN C. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR