[Cite as *State v. Jackson*, 2023-Ohio-3749.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-03-021 |
| | : | O P I N I O N |
| - vs - | | 10/16/2023 |
| | : | |
| ALEXANDER JACKSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 22CR039372

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Engel & Martin LLC, and Joshua A. Engel, for appellant.

**S. POWELL, P.J.**

{¶ 1}   Appellant, Alexander Jackson, appeals his conviction in the Warren County Court of Common Pleas after he was found guilty of one count of first-degree felony rape and one count of third-degree felony sexual battery following a bench trial.  For the reasons outlined below, we affirm Jackson's conviction.

**Facts and Procedural History**

{¶ 2}  On June 3, 2022, the Warren County Grand Jury returned an indictment charging Jackson with one count of first-degree felony rape in violation of R.C. 2907.02(A)(1)(c) and one count of third-degree felony sexual battery in violation of R.C. 2907.03(A)(2).  The charges arose after it was alleged Jackson had engaged in non-consensual vaginal intercourse with a highly intoxicated female, who was not his spouse, during the early morning hours of November 18, 2021.  This alleged rape occurred after the victim, Abby, passed out drunk next to her friend and roommate, Cindy, while the pair were sleeping over at their friend and former classmate Heather's two-bedroom apartment located in Lebanon, Warren County, Ohio.[1]  At the time of the rape, Heather lived at that apartment with her fiancé, Jackson, and their one-year-old son.

{¶ 3}  On June 8, 2022, Jackson was arraigned and entered a not guilty plea to both charges.  The matter ultimately proceeded to a one-day bench trial held on December 19, 2022.  During trial, the trial court heard testimony from several witnesses.  This included testimony from the victim, Abby, and the victim's friend, Cindy, who, as noted above, had purportedly witnessed Jackson having non-consensual vaginal intercourse with Abby during the early morning hours of November 18, 2021.  The trial court also heard testimony from Jackson's fiancé, Heather, the mother of his child.  This was in addition to the trial court hearing testimony from Jackson himself.  The following is a summary of the relevant testimony offered by those four witnesses.

*Summary of the Relevant Trial Testimony*

{¶ 4}  On the afternoon of November 17, 2021, Cindy drove to Heather's apartment with a bottle of vodka to drink and hang out with her and Jackson.  Cindy did this so that

---

1. For privacy concerns, as well as the sensitive nature of the charges, this court has changed the names of those involved in this case other than Jackson.

she could get away from her then boyfriend, Steve, with whom she had been arguing. Later that evening, Abby joined Cindy at Heather and Jackson's apartment with a bottle of tequila. Abby, Cindy, Heather, and Jackson then all began taking shots and watching music videos on TV in the living room. They all became heavily intoxicated—stumbling, talking loudly over each other, falling asleep on the living room couch's armrest—after consuming somewhere between six to ten shots each. Sometime between 10:00 p.m. to 10:30 p.m., Heather went back to her and Jackson's bedroom to go to sleep. Jackson, however, did not. Jackson instead stayed out in the living room with Abby and Cindy to drink and hang out longer. This included Jackson trying to give Abby another shot despite her being nonresponsive, having her eyes closed, and, as Abby testified, being "[i]n and out of consciousness."

{¶ 5} Shortly after Heather went back to her bedroom to go to sleep, Cindy opened the pull-out couch so that she and the "really drunk" Abby could lie down and go to sleep. Once the pull-out couch was ready, Cindy then helped Abby onto the bed while Jackson watched from across the room.[2] Cindy and Jackson then stayed up in the living room for another 30 minutes talking and hanging out together. Abby was at this time fully clothed and "passed out" sleeping on the pull-out couch next to Cindy. The record indicates that, after those 30 minutes elapsed, Cindy then also went to sleep lying on the pull-out couch next to Abby. Jackson, however, still did not go back to his bedroom where his fiancé Heather was sleeping. Jackson instead stayed in the living room sitting on a chair opposite to where Abby and Cindy were sleeping. Jackson testified that this was "[n]ot by choice," but because he was "a little too drunk to do much of anything."

{¶ 6} Cindy testified that after falling asleep that she was awoken by someone

---

2. We note that Jackson denied this and instead claimed that it was he and his fiancé Heather who had opened the pull-out couch for Abby and Cindy to sleep on.

"[b]ouncing on the bed," "[i]t was bouncing that woke me up, like shaking me." Cindy testified that she then rolled over and saw a completely naked Jackson "on top" of Abby "like leaned against the bed on the edge, on the bottom of the bed and he was having sex with her." Cindy testified that Abby was at that time positioned on her side not wearing any pants or underwear. Cindy, who admittedly did not actually see Jackson's penis inside of Abby's vagina, nevertheless testified that the bed was bouncing from Jackson "thrusting" and "moving in and out" from Abby. Cindy testified that this all happened while Abby was passed out, unconscious with her eyes closed, neither talking nor moving. Cindy testified that she then sat up and screamed at Jackson, "what the fuck [are you] doing[?]" Cindy testified that she then "pushed [Jackson] off" of Abby's unconscious body by hitting him in the chest. Cindy testified that Jackson then got off Abby and stumbled away, naked, into his and Heather's bedroom. Cindy testified that Jackson was at that time exhibiting an erect penis.

{¶ 7} Similar to Cindy's testimony, Abby testified that after falling asleep on the pull-out couch that she was awoken by Cindy "screaming something like what are you doing, get off of her." Abby then testified about what happened next. Specifically, Abby testified.

> And then like I felt her push something off of me, like I felt something leave my vagina and I turned over and saw [Jackson] running away, completely naked and then I realized that my pants and my underwear were at my ankles.

Abby later testified that, although she did not see Cindy push Jackson off of her, she "felt the pressure of him leave off of [her]." Abby also testified that, even though she did not remember Jackson's penis initially penetrating her vagina, it was assuredly Jackson's penis that was inside her vagina when she woke up. Abby further testified that she likely would not have known Jackson had ever engaged in vaginal intercourse with her had Cindy not screamed and woken her up by pushing Jackson off of her. This is in addition to Abby

testifying, "Yes," when explicitly asked if she was "sure" it was Jackson's penis that "was inside" her vagina when she woke up to Cindy's screams.

{¶ 8}    Upon Jackson entering his and Heather's bedroom, Cindy told Abby that they needed to leave the apartment immediately.  Abby agreed.  Abby then put on her pants and underwear, Abby and Cindy gathered up her belongings, and left.  Cindy then drove her and Abby to their friend Chelsea's house located in Newport, Kentucky.  Cindy testified that during this 45-to-60-minute drive that Abby was in "shock," "she wasn't really talking and I was telling her what had just happened basically and she just didn't really respond because it was just shocking."  Cindy also testified that she and Abby did not immediately contact the police because, "[i]t was just shocking, we didn't want to—we were just trying to process what just happened, so it felt like a lot more than going to the police than just staying there where we were safe."  Abby similarly testified that she did not contact the police until one or two days later because, "I think I was just in disbelief."

{¶ 9}    On the morning of November 18, 2021, several hours after the rape occurred, Cindy received a message from Jackson through Facebook.  Jackson stated in that message, which was admitted into evidence as State's Exhibit 1, the following:

> I don't remember anything but I believe you.  And how ever she
> wants to handle it, I understand.  You guys won't hear from me
> again.  And I know it doesn't matter or make up for anything, but
> I'm sorry.

Cindy responded to Jackson's message by asking if he had also sent this message to Abby. Jackson answered, "I don't have her on anything.  Please show her[.]"[3]

{¶ 10}  Jackson's fiancé, Heather, testified that after drinking several shots of vodka, and going to bed early at around 10:30 p.m., she woke up the next morning with Jackson

---

3. These quotes are reproduced verbatim to the Facebook messages that Jackson sent to Cindy on the morning of November 18, 2021.

sleeping beside her in bed still wearing the same pants and boxer shorts that he had on the night before. Heather also testified that she had not heard any commotion during the night while she was in her bedroom sleeping. Heather testified she did not hear any screaming or yelling coming from the living room, as well as anything to indicate Jackson had suddenly rushed into the room and jumped into bed with her. Heather testified that this was the case even though, as far as she knew, the door to her and Jackson's bedroom was open the whole night. Heather further testified that Jackson could not have had vaginal intercourse with Abby that evening because he was drunk and "[h]e has a hard time getting an erection when he's drunk." This is in addition to Heather testifying that she would never have tried to have sex with Jackson that evening "[b]ecause it wouldn't have worked and he probably would've fell asleep." Heather did acknowledge, however, that she and Jackson "woke up together and we had sex."

{¶ 11} Heather also admitted to sending several Facebook messages to Abby during the early morning hours of November 19, 2021. Those messages, which were all admitted into evidence as part of State's Exhibit 3, began by Hearther stating:

> Hey I cant even begin to imagine how you feel right now [Abby] I am so sorry I would never knowingly put yall in that situation like im so sorry this has happened I feel so bad and im so lost I understand if u aren't in the mood to talk I just felt like I needed to reach out to you and see if you are ok because I'm not! Do whatever you feel is right im behind you and im seriously so sorry

Abby responded to this message and stated, "I know you are not to blame, know that. I'm just processing." To this, Heather sent another two messages to Abby, wherein Hearther stated, "I know me too," and "I had a feeling in my gut that something happened im just sorry this is happening."[4]

---

4. These quotes are reproduced verbatim to the Facebook messages Heather and Abby sent one another on the morning of November 19, 2021.

- 6 -

{¶ 12} Jackson testified and denied ever having vaginal intercourse with Abby as alleged in the indictment. Like Heather, Jackson instead testified that he would not even have been able to get an erection given the amount of vodka he had consumed that evening. Jackson also testified that he was not sexually attracted to Abby and that, "[t]o the best of [his] abilities," it is his personal and moral code to remain faithful to his fiancé Heather. This is in addition to Jackson testifying, "I didn't have sex with anybody that night," when explicitly asked whether he had sex with "anyone else but your fiancé that night?" Jackson further testified that he "was never naked in that room," that he "never pulled [Abby's] pants down," and that he "never put [his] penis in her vagina." Jackson testified that this must be the case even though he does not specifically recall everything that happened after sitting down in the chair opposite to where Abby and Cindy were sleeping on the pull-out couch because he was "too drunk" to remember, "per se."

*The Trial Court's Verdict and Jackson's Sentence*

{¶ 13} Upon hearing this testimony, and reviewing the exhibits presented by both parties, the trial court issued its decision finding Jackson guilty as charged. In so holding, the trial court initially stated:

> You know, these cases are terrible cases. I've heard more of them than I care to recall and [the assistant prosecutor] is right, they always come down to who is to be believed and who is not to be believed. And, not just that, it's not my job to decide who I believe more. It is my job to decide whether or not I believe the evidence presented by the State beyond a reasonable doubt, which is a very high and heavy burden. It is the most significant burden that is imposed upon this Court by the law for a good reason. I have to be firmly convinced of the truth of the charge and that's with the character of such evidence that I would be willing to rely on in the most important affairs of my life.

{¶ 14} Following these initial comments, the trial court then went through the elements for each of the two offenses, first-degree felony rape in violation of R.C.

- 7 -

2907.02(A)(1)(c) and third-degree felony sexual battery in violation of R.C. 2907.03(A)(2). The trial court then noted that the main issue that needed to be decided was "whether or not [Jackson] engaged in sexual conduct with [Abby] or not.  That is the key element to both the rape and the sexual battery."  The trial court then set forth its verdict, stating:

> The bottom line in this case, Mr. Jackson, I do believe the witnesses of the State beyond a reasonable doubt.  I find that the State has met each and every * * * element which is their burden to carry of the rape.  I find you are guilty of rape.  I also find that you are guilty of the crime of sexual battery with the added element of, that you knew the alleged victim's ability to appraise the nature or control of their conduct was substantially impaired.  So I do find that you are guilty of each of these offenses.

The trial court then ordered the completion of a presentence-investigative report and scheduled the matter for sentencing.

{¶ 15} On February 22, 2023, the trial court held its sentencing hearing.  At this hearing, the trial court sentenced Jackson to serve an indefinite sentence of four to six years in prison, less five days of jail-time credit.  The trial court also ordered Jackson to pay court costs, designated Jackson a Tier III sex offender, and notified Jackson that he would be subject to a mandatory five-year term of postrelease control upon his release from prison. Jackson filed a timely notice of appeal on March 8, 2023.  Jackson's appeal now properly before this court for decision, Jackson has raised one assignment of error for review.

**Jackson's Appeal and Single Assignment of Error**

{¶ 16} In his single assignment of error, Jackson argues the trial court's decision finding him guilty of one count of first-degree felony rape and one count of third-degree felony sexual battery was against the manifest weight of the evidence.  We disagree.

*Manifest Weight of the Evidence Standard of Review*

{¶ 17} "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion."  *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26.  "To

determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 18, citing *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. However, while a challenge to the manifest weight of the evidence requires this court to evaluate witness credibility, this determination is primarily for the trier of fact to decide. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily against the conviction and in favor of acquittal. *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, ¶ 80; *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

*"Sexual Conduct" as an Essential Element of Rape and Sexual Battery*

{¶ 18} As noted above, the trial court found Jackson guilty of one count of first-degree felony rape in violation of R.C. 2907.02(A)(1)(c). The trial court also found Jackson guilty of sexual battery in violation of R.C. 2907.03(A)(2). Both statutes require the state to prove, beyond a reasonable doubt, that the offender engaged in "sexual conduct" with another, not the spouse of the offender, before a guilt finding may be had. R.C. 2907.01(A) defines the term "sexual conduct" to include "vaginal intercourse" between a male and female. The Ohio Revised Code does not define the term "vaginal intercourse" as used in R.C. 2907.01(A). Vaginal intercourse between a male and a female is nevertheless commonly understood to mean "penetration of the vagina with the penis." *State v. Shuster*,

5th Dist. Morgan Nos. 13AP0001 and 13AP0002, 2014-Ohio-3486, ¶ 5. "This penetration need only be slight, however." *State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 9, citing *State v. Remy*, 2d Dist. Clark No. 2017-CA-6, 2018-Ohio-2856, ¶ 27. This is because, as Ohio courts have consistently held, "[v]aginal penetration is proved when any object is applied with sufficient force to cause the labia majora to spread.'" *Id.*, quoting *State v. Patterson*, 5th Dist. Tuscarawas No. 2020 AP 12 0025, 2021-Ohio-2387, ¶ 24. The labia majora is part of the external female genitalia. *Id.* Therefore, "although perhaps medically imprecise—legally, the vagina begins at the external genitalia, not some deeper internal structure." *State v. Artis*, 6th Dist. Lucas No. L-19-1267, 2021-Ohio-2965, ¶ 97.

*Jackson's Arguments and Analysis*

{¶ 19} Although not explicit in his claim, Jackson's argument is essentially a challenge to the trial court's decision finding he had engaged in "sexual conduct" with Abby. More specifically, to the trial court's decision finding the state had proved beyond a reasonable doubt that he had engaged in vaginal intercourse with Abby as alleged in the indictment. To support this argument, Jackson notes three factors that he believes shows the trial court's finding was against the manifest weight of the evidence. Those three factors being: (1) the "lack of physical evidence to corroborate" Abby's claims; (2) Abby's supposed "lack of memory," and "faulty knowledge" regarding the incident; and (3) Abby's and her friend Cindy's "equivocal testimony about penetration." Jackson additionally argues that, because Abby "never explained why she failed to seek medical attention" or "adequately explained why she delayed contacting law enforcement," this also shows the trial court's decision was against the manifest weight of the evidence. All of these factors, according to Jackson, "create a conflict in the evidence that, ultimately, calls into question the alleged victim's credibility, the credibility of the witnesses[,] and the weight to be given to their

testimony * * *." Upon a thorough review of the record, however, we find no merit to Jackson's claim.

{¶ 20} We instead find the trial court's decision finding the state had proved, beyond a reasonable doubt, that Jackson had engaged in "sexual conduct" with Abby was proper. We reach this decision for several reasons. First, it has long been established that "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction." *State v. Scarborough*, 12th Dist. Warren No. CA91-01-012, 1991 Ohio App. LEXIS 5533, *6 (Nov. 18, 1991). That is to say, "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46. The presence of semen in the victim's vagina is also not a prerequisite to a rape conviction. *State v. Estes*, 2d Dist. Montgomery No. 15419, 1996 Ohio App. LEXIS 2234, *7 (May 31, 1996). This is because, "the crime of rape does not require the [s]tate to prove that the defendant achieved a sexual climax." *State v. Bush*, 4th Dist. Ross No. 09CA3112, 2009-Ohio-6697, ¶ 45. Rather, "[a] conviction for rape requires positive evidence, either direct or circumstantial, that sexual conduct of the type alleged in the indictment occurred on or about the time and place specified." *State v. Lucas*, 2d Dist. Montgomery No. 18644, 2001 Ohio App. LEXIS 4227, *6-*7 (Sept. 21, 2001). This necessarily means that, "[t]o prove rape, the state must introduce some evidence, either direct or circumstantial, that penetration by the accused occurred." *State v. Anglen*, 8th Dist. Cuyahoga No. 109049, 2020-Ohio-4830, ¶ 21. The state did that in this case.

{¶ 21} Second, the fact that Abby's memory of the incident was hazy and incomplete should come as no surprise given the victim's level of intoxication and substantial impairment that evening. The victim's substantial impairment was, in fact, one of the elements the state was required to prove before the trial court could find Jackson guilty of

rape in violation of R.C. 2907.02(A)(1)(c).  Pursuant to that statute, no person shall engage in "sexual conduct" with another, who is not the spouse of the offender, when:

> [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

{¶ 22} The phrase "substantially impaired" is not defined by the Ohio Revised Code. *State v. Kilbarger*, 12th Dist. Fayette No. CA2013-04-013, 2014-Ohio-2341, ¶ 10.  The Ohio Supreme Court, however, "has held that 'substantial impairment' must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of her conduct or to control her conduct."  *State v. Anglin*, 12th Dist. Butler No. CA2018-03-058, 2019-Ohio-588, ¶ 16, citing *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987).  This can be demonstrated in several different ways.  This includes through the victim's own testimony, *State v. Jones*, 12th Dist. Warren No. CA2021-04-038, 2021-Ohio-4117, ¶ 48, or "by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct."  *State v. Z.G.B.*, 12th Dist. Warren No. CA2016-04-029, 2016-Ohio-7195, ¶ 15.  Given Abby's testimony elicited in this case, and when coupled with the trial court's findings of guilt, that is exactly what happened here.  This was not an error.

{¶ 23} Third, although it may be true that Abby could not remember when Jackson initially penetrated her vagina with his penis, Abby specifically testified that she did feel Jackson's penis "leave" out of her vagina, followed shortly thereafter by Jackson "running away, completely naked" into his and Heather's bedroom.  Abby also testified, "Yes," when explicitly asked if she was "sure" it was Jackson's penis that "was inside" her vagina upon her waking up to Cindy screaming and pushing Jackson off her.  This is in addition to Cindy's testifying that, although she may not have actually seen Jackson's penis inside of Abby's

vagina, she nevertheless saw a completely naked Jackson "on top" of Abby having vaginal intercourse with her. Cindy testified that she knew Jackson was having vaginal intercourse with Abby given that the bed where she and Abby were sleeping was bouncing from Jackson "thrusting" and "moving in and out" from Abby.

{¶ 24} Cindy further testified that after she pushed Jackson off Abby that she saw Jackson exhibiting an erect penis as he "stumbled away" into his and Heather's bedroom. This evidence, if believed, was more than enough to prove that Jackson had penetrated Abby's vagina with his penis beyond a reasonable doubt. This holds true even though Jackson denied ever having vaginal intercourse with Abby on the night in question. "A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution." *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 31. To the extent Jackson claims otherwise, such argument lacks merit.

{¶ 25} Fourth, while Jackson argues that his conviction must be reversed because Abby "never explained why she failed to seek medical attention" or "adequately explained why she delayed contacting law enforcement," this type of blame shifting does not resonate with this court. This is particularly true in this case when considering Jackson had ample opportunity to cross-examine Abby at length regarding her actions and what she was doing before, during, and after the rape occurred. This includes asking Abby about why she did not go to the hospital or to the police immediately after being raped, two issues Jackson now claims Abby either did not explain at all or did not fully explain to his satisfaction.[5] The same holds true as it relates to Jackson's assertion set forth within his appellate brief that

---

5. We note that Jackson's counsel actually did ask Abby during cross-examination, "did you ever go to the doctor," to which Abby answered, "No." This was the only question that Jackson asked Abby regarding this topic.

Abby's claims were "less than credible" because she "had a history of making passes" at him and had, at some point in the past, offered to use drugs with him "in a sexual manner" by allowing him to snort drugs off her buttocks.

{¶ 26} However, regardless of what Abby may have done in her past, the trial court knew of these allegations and still found Abby's testimony credible. This was not an error. "[T]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. *State v. Bedsole*, 12th Dist. Warren Nos. CA2021-09-089 and CA2021-09-090, 2022-Ohio-3693, ¶ 35. The trial court, as the trier of fact, was in fact free to believe all, part, or none of the testimony offered by any of the witnesses who appeared before it. *State v. Cephas*, 12th Dist. Butler No. CA2021-05-051, 2021-Ohio-4356, ¶ 13. This included both Cindy and Abby, as well as Jackson and his fiancé Heather. To the extent Jackson claims otherwise, such argument again lacks merit.

## Conclusion

{¶ 27} For the reasons outlined above, we find no merit to Jackson's manifest weight of the evidence challenge to the trial court's decision finding him guilty of one count of first-degree felony rape and one count of third-degree felony sexual battery. Therefore, finding no merit to any of the arguments raised by Jackson herein, Jackson's single assignment of error lacks merit and is overruled. Accordingly, having now overruled Jackson's single assignment of error, Jackson's appeal is denied.

{¶ 28} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.