[Cite as *State v. Ndubueze*, 2024-Ohio-1414.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee and Cross-Appellant, | : | CASE NO. CA2023-04-046 |
| | : | O P I N I O N |
| - vs - | | 4/15/2024 |
| | : | |
| SOLOMON KINGSOLO NDUBUEZE, | : | |
| Appellant and Cross-Appellee. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-02-0191

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.


**PIPER, J.**

{¶ 1}  Appellant, Solomon Ndubueze, appeals his convictions in the Butler County Court of Common Pleas for multiple counts of gross sexual imposition and rape. Appellee, the state of Ohio, filed a cross-appeal alleging the victims, K.O. and M.O., were deprived of certain rights under Article I, Section 10a of the Ohio Constitution, commonly referred to as Marsy's Law.

**FACTUAL BACKGROUND**

**{¶ 2}** Appellant was indicted in February 2022 on three counts of rape and seven counts of gross sexual imposition. The charges stemmed from allegations that appellant sexually abused K.O. and M.O. on numerous occasions between 2010 and 2013. Appellant pled not guilty, and the charges were tried to a jury commencing on March 13, 2023.

**{¶ 3}** The two victims, the victims' parents, and Detective David Mize of the Butler County Sheriff's Office testified on behalf of the state.[1] K.O. and M.O. have continuously resided with their parents at their home in West Chester, Ohio. Around April 2010, some of the victims' extended family members, including appellant, immigrated from Nigeria and began living in the West Chester home. At the time, appellant was 16 years old, K.O. was five years old, and M.O. was four years old.

**{¶ 4}** Appellant and his family stayed in the West Chester home from April 2010 until around June 2010. In June 2010, appellant and his family moved to an apartment in Forest Park, Ohio.

**{¶ 5}** During their testimonies, the victims detailed several instances of sexual abuse. K.O. testified appellant first sexually abused her at the West Chester home in the guest bedroom. K.O. testified that appellant took off both their pants and underwear. Appellant put his penis in her mouth. Appellant then had K.O. rub his penis with lotion. He also rubbed his penis on her vagina.

**{¶ 6}** K.O. testified that appellant committed this same pattern of sexual abuse "multiple, multiple times." Appellant would remove their pants, put his penis in her mouth, have her rub his penis, and rub his penis on her vagina. She recalled times where she

---

1. The state also presented testimony from two social workers who were involved in the investigation.

was sexually abused in this manner in the guest bedroom, the basement, and the laundry room of the West Chester home. K.O. testified that appellant would stop if he heard other people in the house approaching.

{¶ 7} K.O. explained that the sexual abuse continued even after appellant and his family moved to the Forest Park home. K.O. testified there were several times when appellant sexually abused her in a bedroom on the second floor of the Forest Park home. Each time, appellant would put his penis in her mouth, have her rub his penis, and rub his penis on her vagina.

{¶ 8} K.O. testified that her family and appellant's family ceased contact with one another around Thanksgiving 2013. K.O. testified that she did not disclose the sexual abuse at the time because she did not understand it was wrong. K.O. testified that, as she got older, the sexual abuse weighed heavily on her mind until she began to think about it constantly. K.O. eventually disclosed the sexual abuse while in an inpatient mental health facility following a suicide attempt.

{¶ 9} M.O. testified about two instances of sexual abuse in the West Chester home, once in the laundry room and once in the guest bedroom. She also testified about one instance of sexual abuse in a bedroom at the Forest Park home. In each instance, appellant took off their pants, put lotion on his penis and her vagina, and then rubbed his penis on her vagina. M.O. later disclosed the abuse after the allegations regarding K.O. came to light.

{¶ 10} The victims' parents corroborated the timeline that appellant and his family lived in the West Chester home from April 2010 until around June 2010 when K.O. was five years old and M.O. was four years old. Appellant and his family moved to the Forest Park home in June 2010. The victims and their parents continued to visit the family at the Forest Park home until sometime in 2013.

{¶ 11} Detective Mize testified about an interview he conducted with appellant as part of his investigation. Detective Mize testified that appellant was cooperative and appeared relaxed until the detective mentioned an investigation regarding K.O. and M.O. Detective Mize testified that appellant's demeanor changed significantly. Appellant suddenly became extremely nervous and began sweating profusely to the point the sweat was "dripping on the table."

{¶ 12} Appellant and his sister testified on behalf of the defense. Appellant's sister testified that the victims never told her that appellant had touched them inappropriately or indicated they were afraid of him. Appellant and his sister also stated that neither K.O. nor M.O. had ever been to the Forest Park home. Appellant denied ever having sexual contact with the victims or appearing naked in front of them. Appellant also discussed his perspiration as observed by Detective Mize, noting that he simply sweats a lot, especially when he gets nervous.

{¶ 13} The jury found appellant guilty on all counts. The trial court sentenced appellant to a mandatory prison term of 15-years-to-life. Appellant now appeals, raising one assignment of error for review. The state cross-appeals, raising two assignments of error for review.

**APPEAL FROM CONVICTION**

{¶ 14} Appellant's sole assignment of error:

{¶ 15} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR RAPE AND GROSS SEXUAL IMPOSITION AND THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Appellant's assignment of error challenges the sufficiency and weight of the evidence. The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶

10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 17} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 18} Appellant was convicted of three counts of rape and four counts of gross sexual imposition as to K.O. He was also convicted of three counts of gross sexual imposition as to M.O.

{¶ 19} Rape is defined in R.C. 2907.02 and provides "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age[.]" Sexual conduct includes, inter alia, vaginal intercourse, fellatio, cunnilingus, and digital penetration of the vagina. R.C. 2907.01(A).

{¶ 20} Gross sexual imposition is defined in R.C. 2907.05 and states "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he

other person, or one of the other persons, is less than thirteen years of age[.] Sexual contact is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 21} After reviewing the record, we find that appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented testimony from K.O. and M.O. that appellant began sexually abusing them on multiple occasions between the years of 2010 and 2013 when both victims were under ten years old. The sexual abuse occurred in different locations in the West Chester home and the Forest Park home.

{¶ 22} K.O. testified about the times where appellant had her perform fellatio on him in the basement of the West Chester home, in the guest bedroom of the West Chester home, and in an upstairs bedroom at the Forest Park home. K.O. also testified about the times where appellant had sexual contact with her in the basement of the West Chester home, in the guest bedroom of the West Chester home, in the laundry room of the West Chester home, and in an upstairs bedroom at the Forest Park home. In addition, M.O. testified about the times where appellant had sexual contact with her in the laundry room of the West Chester home, in the guest bedroom of the West Chester home, and in a bedroom at the Forest Park home.

{¶ 23} On appeal, appellant attempts to discredit both K.O. and M.O. suggesting the information "doesn't add up." He argues that the delayed disclosures of sexual abuse were not credible. He states that ten people lived in the house and suggests that someone else would have noticed or suspected something if he had been sexually abusing them. Despite the testimony of the victims, appellant argues that the evidence presented at trial was insufficient to establish he committed rape or gross sexual

imposition. He goes on to argue that the evidence was also against the manifest weight of the evidence, for example, noting there was no forensic evidence. Appellant raises other speculative arguments, questioning why the victims' father declined to have the victims take a test for sexually transmitted diseases. The substance of the arguments raised by appellant is that K.O. and M.O. were not victims at all and that his convictions should be vacated.

{¶ 24} However, we find appellant's arguments to the contrary to be unpersuasive. The jury was in the best position to judge the credibility of all witnesses, including when appellant testified that he did not sexually abuse K.O. or M.O. *State v. Baughn*, 12th Dist. Clermont No. CA2020-04-020, 2020-Ohio-5566, ¶ 27. A lack of physical or forensic evidence does not require reversal since a victim's testimony, if believed, is sufficient to sustain a conviction. *State v. Harris*, 8th Dist. Cuyahoga No. 108377, 2020-Ohio-1497, ¶ 31; *State v. Timmons*, 10th Dist. Franklin Nos. 13AP-1038 and 13AP-1039, 2014-Ohio-3520, ¶ 23 (stating that physical or forensic evidence is not required to prove rape). The jury found that K.O. and M.O. were credible and did not believe appellant. We find that the jury did not clearly lose its way in making its credibility determination, nor did it create such a manifest miscarriage of justice that appellant's convictions must be reversed.

{¶ 25} After reviewing the record, we find that appellant's convictions are supported by sufficient evidence and were not against the manifest weight of the evidence. As such, appellant's sole assignment of error is overruled.

## STATE'S CROSS-APPEAL

{¶ 26} Cross-Assignment of Error No. 1:

{¶ 27} THE TRIAL COURT ERRED BY DENYING THE VICTIMS THEIR RIGHT TO BE PRESENT AT TRIAL PURSUANT TO THE OHIO CONSTITUTION (MARSY'S LAW), R.C. 2930.09, AND EVID. R. 615.

{¶ 28} Cross-Assignment of Error No. 2:

{¶ 29} THE TRIAL VIOLATED [sic] MARSY'S LAW BY PERMITTING DEFENSE COUNSEL TO CROSS-EXAMINE THE RAPE VICTIM REGARDING IRRELEVANT INFLAMMATORY DETAILS OF A SUICIDE ATTEMPT.

{¶ 30} The state's cross-appeal alleges the victims were deprived of certain rights under Article I, Section 10a of the Ohio Constitution, commonly referred to as Marsy's Law. R.C. 2945.67 grants the state of Ohio a substantive right to appeal decisions in criminal cases, which is limited to certain instances where an appeal is either permitted as a matter of right or may be permitted by leave of the appellate court.

{¶ 31} The state may appeal, as a "matter of right," any decision in a criminal case that (1) grants a motion to dismiss all or part of an indictment, information or complaint; (2) grants a motion to suppress evidence; (3) grants a motion for the return of seized property; or (4) grants postconviction relief. R.C. 2945.67(A).

{¶ 32} The state may also appeal, as a matter of right, a sentence imposed upon a defendant who is convicted of a felony. *Id.*, citing R.C. 2953.08. The state's right to appeal a felony sentence is limited, however, to the grounds enumerated in R.C. 2953.08.

{¶ 33} Finally, the state may also appeal "any other decision, except the final verdict" in a criminal case, but only "by leave of the court to which the appeal is taken." R.C. 2945.67(A). The prosecuting attorney must seek leave from the appellate court according to the procedure outlined in App.R. 5(C). "A motion for leave to appeal is a necessary prerequisite under R.C. 2945.67(A) for the state's right of appeal to attach. Any failure to follow this directive deprives the appellate court of jurisdiction and requires that such appeal be dismissed." *State v. Hamad*, 11th Dist. Trumbull No. 2017-T-0108, 2019-Ohio-2394, ¶ 5; *State v. Kole*, 11th Dist. Ashtabula No. 99-A-0015, 2000 WL 1460031, *3; *State v. Metz*, 4th Dist. Washington No. 93CA18, 1995 WL 695078, *5. The

request for leave must be concurrently filed with the notice of appeal. *State v. Waycaster*, 8th Dist. Cuyahoga No. 108476, 2020-Ohio-1604, ¶ 6, citing *State v. Fisher*, 35 Ohio St.3d 22, 25 (1988). "Further, it is irrelevant that the state raises its argument in a cross appeal rather than in an appeal per se." *Hamad* at ¶ 5.

{¶ 34} The issues raised in the cross-appeal do not fall into any of the categories enumerated in R.C. 2945.67(A) for which the state may appeal of right. Rather, it falls into the "any other decision" category of that statute. Thus, the state needed to seek leave under App.R. 5(C) to file its cross-appeal in this case. It failed to do so and, therefore, has not properly invoked our jurisdiction. *Id.* at ¶ 7; *Kole* at *4; *State v. Mitchell*, 6th Dist. Lucas No. L-03-1270, 2004-Ohio-2460. Therefore, we do not consider the state's cross-assignments of error.[2]

{¶ 35} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

---

2. Furthermore, for the reasons stated in *State v. Ndubueze*, 12th Dist. Butler No. CA2023-04-045, the state's two cross-assignments of error are moot.