[Cite as *State v. Nkoyi*, 2024-Ohio-3144.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-01-007 |
| | : | O P I N I O N |
| - vs - | | 8/19/2024 |
| | : | |
| LAMBERT NKOYI NKOYI, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-03-0431


Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Neal D. Schuett, for appellant.


**S. POWELL, P.J.**

{¶ 1}   Appellant, Lambert Nkoyi Nkoyi, appeals his conviction in the Butler County Court of Common Pleas after a jury found him guilty of single counts of kidnapping and rape, both first-degree felonies, for which the trial court sentenced him to serve an aggregate, indefinite sentence of 12 to 16 years in prison. For the reasons outlined below, we affirm Nkoyi's conviction.

**Facts and Procedural History**

{¶ 2}   On March 29, 2023, the Butler County Grand Jury returned an indictment

charging Nkoyi with single counts of first-degree felony kidnapping in violation of R.C. 2905.01(A)(4) and first-degree felony rape in violation of R.C. 2907.02(A)(2).[1] According to the bill of particulars, these charges arose after it was alleged Nkoyi grabbed the victim, Alice, a then 13-year-old eighth-grade girl, by her wrist and pulled her into one of the two bathrooms located within her family's Butler County apartment.[2] It was alleged that once Alice was inside the bathroom that Nkoyi then closed and locked the door behind him. Nkoyi was alleged to have then lifted Alice's dress, pulled down her underwear, and touched her breasts and digitally penetrated her vagina. The record indicates that this incident occurred during the late afternoon or early evening hours of November 22, 2022. Nkoyi was arraigned on April 11, 2023, and entered pleas of not guilty to both charges.

{¶ 3} On June 12, 2023, the state filed a motion requesting the trial court determine the admissibility of ten video recorded excerpts of Alice's statements made to Cecilia Hicks, a licensed independent social worker and forensic interviewer, while being interviewed at the Mayerson Center for Safe & Healthy Children at Cincinnati Children's Hospital on December 22, 2022.[3] The trial court held a hearing on the state's motion on August 2, 2023. During this hearing, the trial court noted that it was its understanding that after Nkoyi's trial counsel had an opportunity to review a disc containing those ten video excerpts that counsel, "on behalf of Mr. Nkoyi, would be stipulating to the admissibility of those" video clips at trial under Evid.R. 803(4). When asked by the trial

---

1. The indictment also charged Nkoyi with single counts of unlawful sexual conduct with a minor and abduction, both third degree felonies. Those two charges are not relevant to this appeal as they were determined by the trial court to be allied offenses of similar import that merged with the kidnapping and rape charges at Nkoyi's sentencing.

2. This court has changed the name of the victim for purposes of issuing this opinion.

3. "The Mayerson Center is a child-advocacy unit of the hospital that evaluates children who are suspected victims of physical and sexual abuse." *State v. Barnes*, 2011-Ohio-5226, ¶ 41 (12th Dist.). The ten video excerpts at issue last a total of just 5 minutes and 15 seconds, much of which is taken up by Hicks' questions rather than Alice's answers.

court if this was correct, Nkoyi's trial counsel responded by stating:

> Your Honor, that is my understanding as well. I had an opportunity to review said clips and the case law, and have no objection to their admissibility under the current format, but reserve the right to object at trial if they're at all modified. Altered may have been the more appropriate term.

Given the parties' stipulation, the trial court thereafter issued an order granting the state's motion finding the aforementioned ten video excerpts were admissible at trial pursuant to Evid.R. 803(4). In so doing, the trial court noted that its decision was based "[u]pon stipulation of the parties that the Mayerson excerpts offered by the State of Ohio are in compliance with prevailing caselaw and therefore admissible…."

{¶ 4} On October 24 through October 26, 2023, a three-day jury trial was held on the matter. During that trial, the jury heard testimony from a total of seven witnesses. This included the jury hearing testimony from both the alleged victim, Alice, and the defendant, Nkoyi. This also included the jury hearing testimony from Alice's 12-year-old younger sister, Beth, as well as from Hicks, the social worker who interviewed Alice at the Mayerson Center on December 22, 2022.[4]

{¶ 5} Alice, then a 14-year-old freshman in high school, testified that Nkoyi was a close family friend whom she and her five siblings considered to be like an uncle given their shared connections to the Congo in Africa. Alice testified that she and her younger sister, Beth, had in fact lived with Nkoyi and his wife for several months in their neighboring apartment across the street as a favor to help Nkoyi and his wife with their three children. Alice testified that the rest of her family, her parents and five other siblings, had also briefly lived with Nkoyi and his wife after a fire broke out in their apartment that left her family without a place to stay for several weeks.

---

4. This court has also changed the name of the victim's younger sister for purposes of issuing this opinion.

{¶ 6} Given their families' close relationship, Alice testified that on the day in question, November 22, 2022, Nkoyi came over to her family's apartment to take a shower. Alice testified that it was just her and four of her siblings who were home when Nkoyi came over to shower that day, as her mother was at work and her father and older brother were out of town in Louisville, Kentucky. Alice testified that Nkoyi coming to her family's apartment to shower was "normal" at that time because the bathtub at his and his wife's apartment "wasn't working" properly. Alice testified that it was unusual, however, that it was just Nkoyi who came to the apartment to take a shower that day. This is because, according to Alice, it was usually both Nkoyi and his wife who came to their apartment together when they needed to take a shower.

{¶ 7} Alice testified that after Nkoyi was done showering he went into the living room and told her younger sister, Beth, to go get her so that she could "[c]lose the door after him." Alice testified that she then came out to the living room to see Nkoyi out of the apartment when he "told [her] to give him a kiss before he left." To this, Alice testified that she gave Nkoyi a kiss on the cheek. Alice testified that Nkoyi then told her, "no, on the lips." Alice testified that Nkoyi then proceeded to kiss her on the lips with his hands on her waist. Alice testified that Nkoyi then grabbed her around the wrist and "guided" her into one of the apartment's two bathrooms, the one "without" the shower, and locked the door behind him.

{¶ 8} Alice testified that after Nkoyi locked the bathroom door that he then took off her dress, pulled down her underwear, and "started touching" the "inside" of her "vagina" and her "boobs" with his hands. Alice testified that she felt "weird" when Nkoyi touched the inside of her vagina and that, while Nkoyi was touching her, that she was looking "[a]way, like, anywhere but him." Alice testified that Nkoyi then stopped, exited from the bathroom, and left the apartment, telling her that "he'd be back" later that night

- 4 -

at around 9:00 or 10:00 p.m. Alice also testified that Nkoyi promised her that "if [she] kept it a secret, he would get [her] a phone."

{¶ 9} Alice testified that after Nkoyi left the apartment she went and told Beth what had just happened to her. Beth testified and confirmed that shortly after Nkoyi left the apartment that Alice came into the bedroom where she was watching TV visibly upset and crying and said, "he kissed her, and he—he was touching her," and that "he said he was coming back" a few hours later. Alice testified that Nkoyi then did, in fact, come back to the apartment a few hours later. Alice testified that once there, Nkoyi proceeded to knock on the apartment's front door, as well as on her bedroom window, calling out her name, but that neither she nor any of her siblings opened the door to let him in. Alice testified that this occurred at approximately 6:00 p.m., which, according to Alice, was "earlier than he was supposed to come."

{¶ 10} Alice testified that later that night, upon her mother returning home from work, she told her mother what Nkoyi had done to her. Alice also testified that prior to her mother returning home from work that she and her siblings "were all sleeping in one bedroom, the bedroom [that she] slept in" because they were "scared." Alice testified that 9-1-1 was then called and that, a short time later, two police officers arrived at the apartment to speak with her. When asked what she told the responding officers, Alice testified that she told them "what happened," which included her telling the officers that Nkoyi had "touched" her "inappropriately." Nkoyi testified and denied Alice's allegations levied against him. This included Nkoyi testifying that he was never alone with Alice and that he never touched Alice inappropriately as she had alleged.

{¶ 11} Following deliberations, the jury returned a verdict finding Nkoyi guilty of the kidnapping and rape offenses. After the jury issued its verdict, the trial court then scheduled the matter for sentencing and ordered a presentence-investigative report to be

completed. Just over one month later, on November 27 and 30, 2023, the trial court held a sentencing hearing on the matter. At this hearing, the trial court sentenced Nkoyi to serve an aggregate, indefinite sentence of 12 to 16 years in prison, less 234 days of jail-time credit. The trial court also classified Nkoyi as a Tier III sex offender and notified Nkoyi of his duties to enroll as a violent offender. Approximately two weeks later, on December 13, 2023, Nkoyi filed his notice of appeal. Following briefing, Nkoyi's appeal was submitted to this court for consideration on July 10, 2024. Nkoyi's appeal now properly before this court for decision, Nkoyi has raised five assignments of error for review.

**Assignment of Error No. 1:**

{¶ 12} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY ADMITTING INADMISSIBLE HEARSAY EVIDENCE.

{¶ 13} In his first assignment of error, Nkoyi argues the trial court erred by admitting into evidence certain "inadmissible" hearsay testimony at trial. To support this claim, Nkoyi sets forth three arguments for this court's consideration. We review each of those three arguments in turn.

*Abuse of Discretion Standard of Review*

{¶ 14} "The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court." *State v. Singh*, 2022-Ohio-3385, ¶ 31 (12th Dist.). "We review a trial court's decision to admit or exclude evidence for an abuse of [that] discretion." *State v. Napier*, 2017-Ohio-246, ¶ 21 (12th Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Grindstaff*, 2014-Ohio-2581, ¶ 21 (12th Dist.). Most cases where an abuse of discretion is asserted are claims alleging the trial court's decision was unreasonable. *State v. Cast*, 2022-Ohio-3967, ¶ 7 (12th Dist.). "A decision

- 6 -

is unreasonable where a sound reasoning process does not support it." *State v. Miller*, 2016-Ohio-7360, ¶ 7 (12th Dist.). "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *State v. Williams*, 2021-Ohio-2717, ¶ 11 (12th Dist.). "Therefore, absent an abuse of discretion that has resulted in material prejudice, this court will not reverse a trial court's evidentiary decisions regarding the admission or exclusion of evidence at trial." *State v. Edwards*, 2023-Ohio-2632, ¶ 34 (12th Dist.).

*Nkoyi's First Argument: State's Exhibit 30*

{¶ 15} Nkoyi initially argues the trial court erred by admitting into evidence state's Exhibit 30, the aforementioned disc containing the ten video recorded excerpts of the statements that Alice had made during her interview with Hicks conducted at the Mayerson Center on December 22, 2022. To support this claim, Nkoyi argues that the trial court's admission of that disc into evidence allowed the state to introduce "forensic statements" at trial in violation of Evid.R. 803(4). However, as the record indicates, Nkoyi's trial counsel stipulated to the admissibility of state's Exhibit 30 into evidence so long as the recordings included on that disc were not modified or altered from their original format. The record is devoid of any evidence to indicate any such modification or alteration occurred in this case. It is well established that "[a]greements, waivers and stipulations made by the accused, or by the accused's counsel in his presence, during the course of a criminal trial are binding and enforceable." *State v. Post*, 32 Ohio St.3d 380, 393 (1987).

{¶ 16} It is equally well established that "a party may not 'take advantage of an error which he himself invited or induced.'" *State v. Drain*, 2022-Ohio-3697, ¶ 66, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 2000-Ohio-183. Therefore, even assuming there was some merit to Nkoyi's argument, which, as discussed more fully below, there

is not, because Nkoyi's trial counsel stipulated to the admissibility of state's Exhibit 30 into evidence at trial, Nkoyi invited any error that may have occurred by the trial court admitting that exhibit into evidence. The invited error doctrine does not permit Nkoyi to stipulate to the admission of state's Exhibit 30 at trial only for him to then turn around and argue as part of his appeal that the trial court erred by admitting that same exhibit into evidence. *State v. Harvey*, 2020-Ohio-329, ¶ 55 (3d Dist.) ("[t]he doctrine of invited error does not permit [appellant] to stipulate to the admission of Joint Exhibit One at trial and then argue the trial court erred in admitting Joint Exhibit One on appeal"). Accordingly, Nkoyi's first argument lacks merit.

*Nkoyi's Second Argument: Hicks' Testimony*

{¶ 17} Nkoyi next argues the trial court erred by allowing Hicks to testify and describe what Alice told her during the December 22, 2022 interview about what Nkoyi had done to her sexually. Specifically, by allowing Hicks to testify in response to the state asking Hicks to describe what Alice told her had happened to her sexually, the following:

> [Alice] described to me that [Nkoyi], who had come into her house to take a shower because his plumbing wasn't working, when he was leaving, he told her to give him a kiss, so she kissed him on the cheek. And then he said no and pointed to his lips.
>
> And then—and she just stood there, she said. And then he proceeded to kiss her with his lips and his tongue, and then took her into the bathroom and lifted her skirt and pulled her underwear down and touched her vagina with his hand, and then inserted his finger in her vagina, and also put his hands in her shirt or dress. I don't remember which one but underneath her bra and touched her on her boobs.

{¶ 18} Just as with his first argument set forth above, Nkoyi argues that by allowing Hicks to offer this testimony at trial, the trial court permitted the state to introduce "forensic statements" into evidence in violation of Evid.R. 803(4). However, even assuming Nkoyi had properly raised such an objection to the trial court, which the record indicates that he

- 8 -

did not, Hicks' response to the state's question asking her to "describe" what Alice had told her Nkoyi had done to her sexually did not include any testimony violative of Evid.R. 803(4). That is to say, Hicks' testimony specifically describing what Alice told her Nkoyi had done to her sexually was nothing more than Hicks repeating what Alice had said to her primarily for the purpose of providing Alice with the proper medical diagnosis and treatment. "Evid.R. 803(4) provides an exception to the hearsay rule for statements made by a declarant for purposes of medical diagnosis or treatment." *State v. Burson*, 2024-Ohio-1834, ¶ 44 (12th Dist.). Specifically, Evid.R. 803(4) provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 19} The Ohio Supreme Court has considered the admissibility of statements like those testified to by Hicks in this case. *State v. Arnold*, 2010-Ohio-2742.[5] In *Arnold*, "the Ohio Supreme Court differentiated between statements made for medical diagnosis or treatment and those for investigatory purposes during a forensic interview at a treatment center." *State v. Smith*, 2020-Ohio-4008, ¶ 42 (12th Dist.). "The court held that the child-victim's statements to the social worker were for the purpose of medical diagnosis when the child identified the perpetrator, discussed the type of abuse alleged, gave a time frame

---

5. We note that, as part of his first assignment of error, Nkoyi argues that any reliance on the Ohio Supreme Court's decision in *Arnold* "is misplaced and in error" because that case "addressed the testimonial nature of statements made to a forensic investigator under the defendant's Confrontation Clause rights" and "did not address the admissibility of such statements under Evid.R. 803(4)." However, while it may be true that *Arnold* focused on the admissibility of these types of statements under the Confrontation Clause and not under Evid.R. 803(4), this court has already determined that "*Arnold* is instructive in identifying whether statements made to a social worker are primarily medical or forensic." *State v. Warman*, 2017-Ohio-244, ¶ 48 (12th Dist.); *see, e.g., State v. Pence*, 2013-Ohio-1388, ¶ 37 (12th Dist.) (finding that, although not presented with a Confrontation Clause issue, the Ohio Supreme Court's decision in *Arnold* nevertheless "compels the conclusion that [the child-victim's] statements to [a forensic interviewer during an interview conducted at a local child advocacy center] were for purposes of medical diagnosis and treatment, thus they were admissible under Evid.R. 803[4]"). To the extent Nkoyi claims otherwise, such argument lacks merit.

of the alleged abuse, and identified the areas where the child had been touched." *State v. Turner*, 2020-Ohio-1548, ¶ 53 (12th Dist.). "On the other hand, statements such as the child's assertion that the offender shut and locked the door before raping her, the child's description of where others were in the house at the time of the rape, the child's statement that the offender removed her underwear, and the child's description of the offender's boxer shorts, [the court] determined were statements relating primarily to the investigation." *State v. Warman*, 2017-Ohio-244, ¶ 48 (12th Dist.).

{¶ 20} In this case, other than Hicks briefly mentioning that Alice told her Nkoyi had lifted her skirt and pulled down her underwear prior to him raping her, the statements that Hicks attributed to Alice in this case are essentially the same as those discussed and found admissible by the Ohio Supreme Court in *Arnold*. "That the statements were made to a social worker does not mean that the statements were not reliable or inadmissible under Evid.R. 803(4)." *Burson*, 2024-Ohio-1834 at ¶ 55 (12th Dist.), citing *State v. Muttart*, 2007-Ohio-5267, ¶ 56. Therefore, for the reasons set forth above, the trial court did not err, plain or otherwise, by allowing Hicks to testify in the manner that she did. Nkoyi's assertion otherwise lacks merit. Nevertheless, even if we were to find the trial court erred by admitting into evidence Hicks' testimony set forth above, which we do not, any such error would be harmless. This includes Hicks' testimony briefly mentioning the fact that Alice had told her Nkoyi lifted her skirt and pulled down her underwear prior to him raping her.

{¶ 21} "[T]he admission of hearsay evidence is harmless error where it is merely cumulative." *State v. Robinson*, 2015-Ohio-4533, ¶ 30 (12th Dist.). Thus, "[a]n admission is harmless when the declarant is examined at trial on the same matters as the hearsay and the erroneous evidence is cumulative in nature." *State v. Villani*, 2019-Ohio-1831, ¶ 23 (12th Dist.). That is to say, "in those cases 'where a declarant is examined on the

same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless.'" *State v. Sims*, 2009-Ohio-550, ¶ 17 (12th Dist.), quoting *State v. Tomlinson*, 33 Ohio App.3d 278, 281 (12th Dist.1986). That is exactly what occurred here. Therefore, because Alice took the stand and testified consistent with the statements attributed to her by Hicks, any error the trial court may have made would constitute, at worst, harmless error. *See, e.g., State v. Chisenhall*, 2024-Ohio-1918, ¶ 20 (12th Dist.) (similarly holding that "because [the child-victim] took the stand and testified consistent with the statements attributed to her by her forensic interviewer, her high school friend, and her mother, any error the trial court may have made by admitting the challenged testimony elicited from those three witnesses would constitute, at worst, harmless error"). Accordingly, Nkoyi's second argument also lacks merit.

### Nkoyi's Third Argument: Beth's Testimony

{¶ 22} Nkoyi lastly argues the trial court erred by allowing Alice's 12-year-old younger sister, Beth, to testify as to what Alice told her just after Nkoyi left their apartment as an excited utterance under Evid.R. 803(2). Specifically, Nkoyi challenges the admissibility of Beth's testimony that a short time after Nkoyi left the apartment that Alice came into the bedroom where she was watching TV visibly upset and crying and told her that Nkoyi had just "kissed her, and he—he was touching her." To support this claim, Nkoyi argues that the state failed to provide a "sufficient foundation" to establish the statements made by Alice to her younger sister Beth was done while Alice was "under the stress of a startling event …." However, as the record indicates, Beth testified that Alice made this statement shortly after Nkoyi left the apartment at a time when Alice was clearly upset and crying.

{¶ 23} "An out-of-court statement qualifies as an excited utterance if '(1) the

statement was made in reaction to a startling event; (2) the statement was made under the stress of excitement caused by the event; and (3) the statement relates to the event.'" *State v. Cooperstein*, 2019-Ohio-4724, ¶ 86 (12th Dist.), quoting *State v. Nitz*, 2004-Ohio-6478, ¶ 20 (12th Dist.). The statement Alice made to Beth shortly after Nkoyi left their apartment claiming Nkoyi had just "kissed her, and he—he was touching her" falls squarely within that definition. *See, e.g., State v. Haskell*, 2015-Ohio-3095, ¶ (3d Dist.) (finding a teenaged child-victim's statement that appellant "touched her in her private area" made shortly after the touching was alleged to have occurred was an excited utterance admissible under Evid.R. 803[2] "since she was still crying and visibly upset" when the statement was made). Therefore, finding no error in the trial court's decision, Nkoyi's third and final argument likewise lacks merit. Accordingly, finding no merit to any of the three arguments raised by Nkoyi herein, Nkoyi's first assignment of error is overruled.

**Assignment of Error No. 2:**

{¶ 24} MR. NKOYI'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 25} In his second assignment of error, Nkoyi argues the jury's verdicts finding him guilty of kidnapping and raping Alice were not supported by sufficient evidence. We disagree.

*Sufficiency of the Evidence Standard*

{¶ 26} A claim challenging the sufficiency of the evidence invokes a due process concern that raises the question of whether the evidence was legally sufficient to support the jury's verdict as a matter of law. *State v. Clinton*, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. Such a challenge "requires a determination as to whether the state has met its burden of production at trial." *State v.*

*Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Therefore, "[i]n a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. Accordingly, when reviewing whether a jury's verdict finding the defendant guilty was supported by sufficient evidence, "[t]his court merely determines whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt." *State v. Brummett*, 2024-Ohio-2332, ¶ 9 (12th Dist.).

*Kidnapping and Rape in Violation of R.C. 2905.01(A)(4) and 2907.02(A)(2)*

{¶ 27} As noted above, the jury found Nkoyi guilty of first-degree felony kidnapping in violation of R.C. 2905.01(A)(4). That statute provides that no person, "by force, threat, or deception," shall "remove another from the place where the other person is found or restrain the liberty of the other person," to "engage in sexual activity, as defined in Section 2907.01 of the Revised Code, with the victim against the victim's will." "[I]t is well-established through case law that the removal or restraint element requires a purposeful act." *State v. Menton*, 2009-Ohio-4640, ¶ 90 (7th Dist.). R.C. 2907.01(C) defines the term "sexual activity" as either "sexual conduct or sexual contact, or both."

{¶ 28} The jury also found Nkoyi guilty of first-degree felony rape in violation of R.C. 2907.02(A)(2). That statute provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by

force or threat of force." A person acts purposely "when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). The term "force" is defined by R.C. 2901.01(A)(1) to mean "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Therefore, given the plain language found in both R.C. 2905.01(A)(4) and 2907.02(A)(2), a guilty verdict can be had only where the accused, in addition to the other essential elements set forth within those two statutes, engaged in "sexual conduct" with the victim.

{¶ 29} The term "sexual conduct" is defined by R.C. 2907.01(A) to include "vaginal intercourse" between a male and female. "Vaginal intercourse between a male and a female means penetration of the vagina with the penis." *State v. Kettles*, 2023-Ohio-4024, ¶ 24 (12th Dist.). The term "sexual conduct" is also defined by R.C. 2907.01(A) to include "the insertion, however slight, of any part of the body" into the "vaginal opening" of another. "Thus, when the phrases 'vaginal intercourse' and 'vaginal opening' are read together, it is apparent that sexual conduct occurs when there is penetration of the vaginal opening by a penis or other body part." *State v. Strong*, 2011-Ohio-4947, ¶ 53 (1st Dist.). "This necessarily includes digital penetration of the victim's vaginal opening with a finger or fingers." *State v. Zamora*, 2023-Ohio-1847, ¶ 7 (12th Dist.); *State v. Sanchez-Sanchez*, 2022-Ohio-4080 ¶ 120 (8th Dist.) ("[t]he insertion of a finger into another person's vaginal opening—digital penetration—is 'sexual conduct'"). "This penetration need only be slight, however." *Id.* at ¶ 9, citing *State v. Remy*, 2018-Ohio-2856, ¶ 27 (2d Dist.).

{¶ 30} The Ohio Revised Code does not define "vaginal opening" as that term is used in R.C. 2907.01(A). *Id.* But, "although not defined by the Ohio Revised Code, it is generally well established that penetration of the victim's "vaginal opening" has occurred where there was some forceful spreading of the external female genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora." *Id.*, citing *State v. McCoy*,

- 14 -

2020-Ohio-4511, ¶ 72 (3d Dist.); *see, e.g., State v. Rowland*, 2020-Ohio-2984, ¶ 20 (12th Dist.) ("[b]ased upon [the victim's] testimony, a jury could find that [appellant's] conduct in 'using his fingers to go between the lips' and touch her clitoris, which she described as 'located inside her vaginal opening,' necessarily caused [the victim's] labia majora to spread"). "Ohio courts have, in fact, 'consistently held that vaginal penetration is proved when any object is applied with sufficient force to cause the labia majora to spread.'" *Id.*, citing *State v. Patterson*, 2021-Ohio-2387, ¶ 24 (5th Dist.). "Therefore, 'although perhaps medically imprecise—legally, the vagina begins at the external genitalia, not some deeper internal structure.'" *State v. Jackson*, 2023-Ohio-3749, ¶ 18, (12th Dist.), quoting *State v. Artis*, 2021-Ohio-2965, ¶ 97 (6th Dist.).

*Nkoyi's Argument and Analysis*

{¶ 31} To support this assignment of error, Nkoyi argues the state failed to present sufficient evidence to prove, beyond a reasonable doubt, that he either kidnapped or raped Alice as she had alleged. Nkoyi claims that this must be the case when considering the state did not present any "forensic, video, or audio evidence" to corroborate Alice's trial testimony, nor did the state offer any "evidence or testimony" to rebut the testimony that Nkoyi provided to the jury upon taking the stand and proclaiming his innocence.

{¶ 32} However, based on a simple review of the record, we find Alice's testimony, if believed, presents sufficient evidence to support the jury's verdict finding Nkoyi guilty of both kidnapping and rape offenses beyond a reasonable doubt. *See, e.g., State v. Dandridge*, 2021-Ohio-3355, ¶ 99 (8th Dist.) (finding teenaged child-victim's testimony that appellant locked her in a bedroom, forced her to lay down, and tried to "use" a vibrator on her, if believed, presented sufficient evidence that appellant "used force in restraining [the victim's] liberty to engage in sexual activity, particularly in light of the age difference" and relationship with the victim so as to support the jury's verdict finding appellant guilty

of kidnapping in violation of R.C. 2905.01[A][4]); and *State v. Howard*, 2014-Ohio-3373, ¶ (9th Dist.) (finding teenaged child-victim's testimony that appellant forced her into his house where he then pushed her down to her knees and onto the ground and put his penis into her mouth and vagina, if believed, presented sufficient evidence to support the jury's verdict finding appellant guilty of rape in violation of R.C. 2907.02[A][2]).

{¶ 33} Alice's testimony, if believed, establishes that after Nkoyi kissed Alice on the lips, Nkoyi then grabbed Alice by the wrist and forced her into one of the two bathrooms located within her family's apartment and locked the door behind him. Alice's testimony also establishes that, after forcing Alice into the bathroom and locking the bathroom door, Nkoyi then engaged in sexual conduct with Alice, a then 13-year-old girl, by digitally penetrating her vaginal opening against her will. The jury clearly found Alice's testimony credible, whereas Nkoyi's opposing testimony was not. This was not an error "for it is well established that the jury, as the trier of fact, was free to believe all, part, or none of each witnesses' testimony who appears before it." *State v. Cast*, 2022-Ohio-3967, ¶ 23 (12th Dist.). To the extent Nkoyi argues otherwise, such argument lacks merit.

{¶ 34} In so holding, we note that, "In rape cases such as this, 'courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration.'" *State v. Hernandez*, 2011-Ohio-3765, ¶ 40 (12th Dist.), quoting *State v. Dunn*, 2005-Ohio-1270, ¶ 11 (9th Dist.). Therefore, contrary to Nkoyi's claim, neither forensic nor physical evidence is required to corroborate Alice's allegations before the jury could find him guilty of kidnapping and rape beyond a reasonable doubt. *See State v. Timmons*, 2014-Ohio-3520, ¶ 23 (10th Dist.). The fact that Nkoyi took the stand in his own defense and denied any wrongdoing does not change this fact. This is because, as discussed more fully below, "the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar

competence of the factfinder, who has seen and heard the witness." *State v. Bedsole*, 2022-Ohio-3693, ¶ 35 (12th Dist.). Accordingly, finding the state satisfied its burden of production at trial, thereby establishing Nkoyi's conviction for kidnapping and raping Alice was supported by sufficient evidence, Nkoyi's second assignment of error also lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 35} MR. NKOYI'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 36} In his third assignment of error, Nkoyi argues the jury's verdict finding him guilty of kidnapping and raping Alice was against the manifest weight of the evidence. We again disagree.

*Manifest Weight of the Evidence Standard*

{¶ 37} "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 2020-Ohio-3762, ¶ 18 (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides a witness' credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the

- 17 -

evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.). When reviewing a jury verdict, this may occur "only when there is unanimous disagreement with the verdict." *State v. Marcum*, 2016-Ohio-263, ¶ 10 (12th Dist.), citing *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist.1999).

*Nkoyi's Argument and Analysis*

{¶ 38} To support this assignment of error, Nkoyi argues the jury's verdict finding him guilty of kidnapping and raping Alice was against the manifest weight of the evidence because certain aspects of the trial testimony elicited from Alice, Beth, and Hicks were inconsistent and contradictory. These contradictions included, among others, a dispute between Alice's and Beth's trial testimony as to what room three of their other siblings were located in when Nkoyi arrived at their family's apartment to take a shower. Nkoyi argues that these inconsistencies "harm[ed] the weight of the evidence" offered by the state and effectively prevented the state from meeting its burden of persuasion. Nkoyi argues that this is especially concerning in this case because, rather than three ancillary witnesses to the alleged crimes, this was the testimony of the victim, Alice, which was "substantially undermined."

{¶ 39} However, although there were some inconsistencies in the testimony elicited from Alice, Beth, and Hicks at trial, it is well established that "[i]nconsistencies in the evidence alone do not mean that a decision is against the manifest weight of the evidence." *State v. Gregory*, 2023-Ohio-1700, ¶ 16 (12th Dist.). This is particularly true here when considering the inconsistencies in the testimony offered by these three witnesses were relatively minor, thus falling well short of what it would take to render their testimony inherently unworthy of belief. *See, e.g., State v. Freeman*, 2023-Ohio-3745, ¶ 12 (12th Dist.) (finding "the inconsistencies in the testimony offered by the state's two crucial witnesses was minor, thus falling well short of what it would take to render either

of those two witnesses' testimony inherently unworthy of belief"); and *State v. Berry*, 2004-Ohio-6027, ¶ 12 (12th Dist.) (noting "the inconsistencies in the testimony of the state's witnesses were minor, and they did not render their testimony inherently unworthy of belief").

{¶ 40} Moreover, even assuming the inconsistencies in the testimony elicited from Alice, Beth, and Hicks were something more than just minor contradictions, which the record indicates that they predominantly were not, it is primarily the trier of fact who decides a witness' credibility. *Kaufhold*, 2020-Ohio-3835 at ¶ 10. "We must defer to the jury's determinations of the witnesses' credibility." *State v. Reed*, 2023-Ohio-878, ¶ 42 (12th Dist.). This is because it is the jury, and not this court on appeal, which is in the best position to judge the credibility of the testimony elicited from each witness who was called to the stand to testify at a trial. *State v. Ndubueze*, 2024-Ohio-1414, ¶ 24 (12th Dist.). This includes, of course, when Nkoyi himself took the stand in his own defense to proclaim his innocence. This is why a conviction is not against the manifest weight of the evidence simply because the jury chose to believe the testimony and evidence presented by the state as opposed to what was presented by the accused. *State v. Sheldon*, 2023-Ohio-2998, ¶ 33 (12th Dist.).

{¶ 41} Rather, as stated previously, it is only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of acquittal will this court overturn a conviction on manifest-weight of the evidence grounds. *State v. Ridenour*, 2023-Ohio-2713, ¶ 50 (12th Dist.). This is not one of those extraordinary cases where the evidence presented at trial weighs heavily in favor of acquittal. *But see State v. Roan*, 2020-Ohio-5179, ¶ 27-46 (8th Dist.) (finding appellant's conviction for rape in violation of R.C. 2907.02[A][1][c] was the exceptional case where the evidence weighed heavily against the appellant's conviction, thus rendering appellant's conviction for rape against the

manifest weight of the evidence). This is also not one of those extremely rare cases where the jury's verdict causes this court to question the nature of the proceedings before the trial court. *See Gardner v. Melling*, 2017-Ohio-7809, ¶ 10 (12th Dist.). This is instead a case that amounts to little more than he-said, she-said, a standard grouping of cases where the credibility of the witnesses' testimony is paramount. *See State v. Chasteen*, 2014-Ohio-4622, ¶ 14 (12th Dist.) ("[t]he credibility of the witnesses is paramount in cases such as this where the evidence amounts to little more than a matter of 'he said, she said'"). Therefore, finding the state also satisfied its burden of persuasion, Nkoyi's third assignment of error likewise lacks merit and is overruled.

**Assignment of Error No. 4:**

{¶ 42} THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A COUNSEL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 43} In his fourth assignment of error, Nkoyi argues his trial counsel provided him with ineffective assistance. To support this claim, Nkoyi argues his trial counsel was ineffective for: (1) not making a Crim.R. 29(A) motion for acquittal at the close of the state's case; (2) stipulating to the admission of state's Exhibit 30; and (3) failing to object to Hicks' testimony describing what Alice told her during Hicks' interview of Alice conducted at the Mayerson Center on December 22, 2022.

{¶ 44} However, given this court's decisions set forth above overruling Nkoyi's second and third assignments of error finding the jury's verdict finding him guilty of both kidnapping and rape offenses, Nkoyi's trial counsel making a Crim.R. 29(A) motion for acquittal at the close of the state's case would have been futile. "An attorney is not ineffective for failing to make a futile or frivolous request." *State v. White*, 2022-Ohio-2182, ¶ 14 (12th Dist.). "Trial counsel is [also] not ineffective for failing to make a futile argument." *State v. Trafton*, 2023-Ohio-122, ¶ 29 (12th Dist.); *see, e.g., Cleveland v.*

*Casals*, 2013-Ohio-5578, ¶ 11 (8th Dist.) (appellant's trial counsel's failure to make a Crim.R. 29[A] motion for acquittal at the close of the state's case was not deficient where the evidence presented at trial, if believed, was sufficient to establish appellant's guilt beyond a reasonable doubt, thereby rendering any Crim.R. 29[A] motion for acquittal that appellant's trial counsel may have filed futile); and *State v. Fox*, 2015-Ohio-3892, ¶ 31 (4th Dist.) (appellant's trial counsel's failure to make a Crim.R. 29[A] motion for acquittal at the close of the state's case was not deficient where, as the court had already determined in an earlier assignment of error, appellant's conviction was not against the manifest weight of the evidence).

{¶ 45} Additionally, this court's decision overruling Nkoyi's first assignment of error wherein he challenged the trial court's admission of certain alleged hearsay evidence also demonstrates that Nkoyi's trial counsel was not deficient for stipulating to the admission of state's Exhibit 30. The same holds true as it relates to Nkoyi's trial counsel failing to object to Hicks' testimony describing what Alice told her Nkoyi did to her sexually during Hicks' interview of Alice conducted at the Mayerson Center on December 22, 2022. This is because, as discussed more fully above, both state's Exhibit 30 and Hicks' testimony describing what Alice told her Nkoyi did to her sexually were admissible under Evid.R. 803(4).

{¶ 46} "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 2014-Ohio-4625, ¶ 7 (12th Dist.). Given this presumption, to prevail on an ineffective assistance of counsel claim, the appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Ford*, 2021-Ohio-782, ¶ 13 (12th Dist.). "[U]nder *Strickland*, in order to prevail on a claim that counsel was ineffective, a criminal defendant must show (1) that his counsel's performance was

deficient and (2) that that performance prejudiced him." *State v. Simpson*, 2020-Ohio-6719, ¶ 18, citing *Strickland* at 687. Therefore, to establish his ineffective assistance of counsel claim in this case, Nkoyi was required to show that his trial counsel's performance was deficient, and that his counsel's deficient performance subjected him to be prejudiced as a result. *See State v. Johnson*, 2023-Ohio-879, ¶ 15 (12th Dist.). Nkoyi failed to establish either of those two prongs. Accordingly, because the failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim, *see State v. Jewell*, 2022-Ohio-2727, ¶ 9 (12th Dist.), Nkoyi's fourth assignment of error lacks merit and is overruled.

**Assignment of Error No. 5:**

{¶ 47} THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL THROUGH CUMULATIVE ERROR.

{¶ 48} In his fifth assignment of error, Nkoyi argues the cumulative error doctrine requires his conviction be reversed and this matter remanded to the trial court for a new trial. However, for the cumulative error doctrine to apply, "an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court." *State v. Cramer*, 2004-Ohio-1712, ¶ 67 (12th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191, 197 (1987); *State v. Madrigal*, 87 Ohio St.3d 378, 398, 2000-Ohio-448 (noting that "in order even to consider whether 'cumulative' error is present, we would first have to find that multiple errors were committed in this case"). Given this court's decisions set forth above related to Nkoyi's first four assignments of error, Nkoyi failed to establish that the trial court committed any single error, let alone multiple errors, which would trigger the application of the cumulative error doctrine to this case. Therefore, finding the cumulative error doctrine inapplicable to the case at bar, Nkoyi's fifth assignment of error lacks merit and is overruled.

{¶ 49} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.